1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAHMOUD MOHAMED,

      Plaintiff,

    v.

JOHN POTTER,

      Defendant.

_____/

No. C 05-02194 CRB

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT**

      This employment discrimination case arises from nine separate complaints filed with the Equal Employment Opportunity Commission (EEOC) between 1996 and 1999 by Mahmound Mohamed against employees at the United States Postal Service's Oakland Processing and Distribution Center.  Mohamed alleges that the conduct in each complaint constitutes unlawful retaliation and discrimination in violation of Title VII, and, <u>in toto</u>, created a hostile work environment.  The EEOC granted summary judgment to the Postal Service in each case.

      The record reflects a contentious and troubled relationship between Mohamed and many of his supervisors.  However, Mohamed has not borne his burden of establishing that any of the slights he suffered were discriminatory or retaliatory in nature.  Nor has Mohamed demonstrated that he was subjected to conduct that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.  Accordingly, the defendants' motion for summary judgment is GRANTED.

**United States District Court**
For the Northern District of California

**BACKGROUND**

Mohamed brings this action under Title VII, alleging that he was subjected to retaliation for filing complaints with the EEOC and discrimination on the basis of sex, race, age, color, religion, national origin, and disability.  Mohamed began working for the Postal Service (USPS) in 1986 and, according to Mohamed, received positive evaluations before problems developed in 1994.  See Opp. at 3-4.  In July of 1994, Mohamed testified at an EEOC hearing for Roger Holly, who accused employees in the USPS's Oakland office of sexual harassment.  See Mohamed Decl. ¶ 4.  Mohamed actually testified that he was unaware of Holly's accusations or of any alleged harassment.  See USPS 8396-98.  Nevertheless, according to Mohamed, a pattern of retaliation and harassment began in September of 1994 after giving his testimony, and the allegedly unlawful acts form the basis of Mohamed's nine EEOC complaints, which are described below.  See Mohamed Decl. ¶ 4.

1. EEO Case 1F-946-1118-96 (Filed October 28, 1996)

Mohamed's first complaint alleged that he was discriminated against on the basis of race, color, religion, sex, national origin, physical disability and prior EEO activity when "(1) on [July] 30, 1996 the Manager Distribution Operations refused to accommodate his religious beliefs, and (2) on August 14, 1996 and August 20, 1996 on a number of occasions, the managers made false and malicious statements about him as attempts to defame his character."  USPS 417.

According to Mohamed, he asked Manger Leon Francisco to change his weekly schedule so that he could attend Mosque.  See USPS 574.  Francisco refused but did not put his decision in writing.  See id.  Mohamed also alleged that in early August of 1996, he heard about sexually explicit remarks made by employees Dan Williams and Wess Atkins.  See USPS 572.  Mohamed then reported the remarks to Francisco, who threatened to downgrade Mohamed and accused Mohamed of actively soliciting employees to report sexual harassment incidents.  See USPS 573.

**United States District Court**
For the Northern District of California

2. EEOC Case 1F-946-0021-97 (Filed November 25, 1996)

Mohamed's second complaint alleged that he was discriminated against when he received a letter from the Senior Plant Manager denying him a "New Idea Proposal award." See USPS 198.  Mohamed claimed that he submitted a suggestion to improve labeling in 1993, which was adopted by Oakland management, but that recognition and compensation were denied "due to my prior EEO activity against management."  Id.  Mohamed alleged that the stated reasons for the denial – that Mohamed's suggestion was within the scope of his responsibilities, that the idea was not new, and that Mohamed's role in recommending labeling improvements would be more appropriately evaluated through the "supervisory merit evaluation process," USPS 212 – were pretextual.

3. EEOC Case 1F-946-0024-97 (Filed January 14, 1997)

The issue presented by Mohamed's third complaint is whether he was discriminated against on the basis of prior EEO activity when he was not selected for the position of Supervisor Distribution Operations, for which he had applied.  See USPS 1429.  Mohamed alleged that despite his exemplary record, the position was given to Jeffrey Thompson, "a black younger man . . . with only a few months experience as acting supervisor."  USPS 1439.  During an EEOC investigation, Manager of Distribution Operations in International Mails, Millie Watson, who made the hiring decision, stated that there were 35 applicants for the position but that Thompson was selected as the most qualified applicant.  See USPS 1435.

4. EEOC Case 1F-946-0062-97 (Filed June 2, 1997)

In his fourth complaint, Mohamed alleged discrimination when on February 19, 1997, his supervisor gave him an unfavorable evaluation and made negative and untrue statements on his application for a membership position on the Diversity and Affirmative Action Advisory Committee.  See USPS 264.

United States District Court
For the Northern District of California

1    5. EEOC Case 1F-946-0064-97 (Filed July 14, 1997)

2        Mohamed alleged in his fifth complaint that he was discriminated against when on

3    March 1, 1997, his pre-approved leave was later changed to AWOL, and management

4    required him to submit medical documentation for his leave. See USPS 2962.

5        In the first instance, acting manager Glynis Hughes brought Mohamed's leave request

6    to the attention of senior manager Herb Gauthier. See USPS 2965. Mohamed requested two

7    weeks of sick leave, but the documentation submitted by Mohamed indicated he could

8    perform partial duties according to Gauthier. See id. Hughes requested evidence of total

9    incapacity, which was subsequently submitted and the leave was approved. See id.

10       In the second instance, Mohamed requested leave for six weeks pursuant to the

11   Family Medical Leave Act to travel to Ethiopia to bond with his son. See id. Gauthier

12   requested Hughes obtain from Mohamed a statement indicating a reason for the leave. See

13   id.

14   6. EEOC Case 1F-946-0107-97 (Filed August 22, 1997)

15       In this claim, Mohamed alleged that he was discriminated against when: (1) manager

16   Ezequiel Munoz deliberately failed to provide him with an approved Form 3971 until July 9,

17   1997, to cause confusion and anxiety; (2) on June 22, 1997, Mohamed received a letter from

18   Munoz containing false statements and distortions about actual events; and (3) on June 24,

19   1997, Mohamed was informed by the shop steward that Manager Herb Gauthier was

20   investigating him. See USPS 1640.

21       According to Mohamed, he requested leave without pay by filing a Form 3971 but

22   was ignored when he requested updates on the status of the application. See USPS 1647.

23   Munoz told an EEOC investigator that he denied the request for leave because the medical

24   documentation Mohamed submitted was unacceptable. See USPS 1649. The documentation

25   submitted was a copy of a medical slip that had been blacked out. See id. In addition,

26   Munoz stated that Mohamed filled out the Form 3971 incorrectly, checking off the

27   "approved" box, which is to be filled out by the approving official. See id. Any delay was

28

4

United States District Court
For the Northern District of California

1  therefore caused by Mohamed's failure to file appropriate leave request procedures,

2  according to Munoz.

3       Regarding the second claim, Mohamed received a memo from Munoz memorializing

4  a conversation between the two about work assignments.  See Munoz Decl. Exh. A.  Munoz

5  stated that he wrote the letter because he has experienced numerous occasions where

6  statements were misquoted or taken out of context by Mohamed.  See USPS 1651.

7       Finally, the third claim relates to an investigation conducted into whether Mohamed

8  engaged in misconduct when, following the settlement of a grievance filed by Laura Porter

9  against a fellow supervisor, Mohamed attempted to persuade the union to reinstate the

10  grievance.  See USPS 1652.  Mohamed received a proposed reduction in grade and pay for

11  conduct unbecoming a supervisor, but the reduction was later rescinded based on conflicting

12  evidence.

13       7. EEOC Case 1F-946-0034-98 (Filed April 8, 1998)

14       In his seventh complaint, Mohamed alleged that he was discriminated against when:

15  (1) on January 14, 1998, a letter of potential reduction was rescinded due to conflicting

16  statements; (2) management sent four letters between December 4, 1997 and January 21,

17  1998 concerning the proposed reduction to Mohamed instead of his attorney; and (3)

18  Mohamed was excluded from the Fiscal Year 1997 Variable Pay Program.  See USPS 915.

19       8. EEOC Case 1F-946-0065-98 (Filed September 30, 1998)

20       Mohamed alleged discrimination when: (1) on June 2, 1998, he received information

21  regarding false statements made by postal managers and supervisors and submitted to the

22  Department of Labor's Office of Workers' Compensation Processing (OWCP) that defamed

23  his character; and (2) in July of 1998, he became aware of an affidavit statement provided by

24  Mario Valdez, the Manager of Distribution Operations, which contained false accusations

25  and violated a prior EEO settlement agreement.

26       The Postal Service received a request from OWCP for a response to allegations made

27  by Mohamed to OWCP in an application for workers' compensation.  Herb Gauther sent a

28  letter denying that he treated Mohamed in an abusive manner.  See USPS 7149.  Leon

5

United States District Court
For the Northern District of California

1  Francisco sent a one-page letter also denying that he mistreated Mohamed, and accusing

2  Mohamed of "making up stories." USPS 7151. An internal letter written by employee Dan

3  Williams, who had accused Mohamed of harassment and subterfuge and of pursuing

4  "machiavellian machinations" with "messianic zeal," was forwarded to OWCP by a human

5  resources employee. USPS 7156.

6      9. EEOC Case 1F-946-0010-99 (Filed January 30, 1999)

7      In this claim, Mohamed alleged that he was discriminated and retaliated against by:

8  (1) Dianna Ybarra when she delayed his paperwork from the OWCP requesting

9  compensation for a workplace injury and reconsideration of his workplace injury claim; and

10 (2) Ezequiel Munoz, who sent a memo to OWCP dated September 10, 1998 stating

11 Mohamed's workplace injury claim should not be accepted.

12                          STANDARD OF REVIEW

13     Summary judgment is proper when "the pleadings, depositions, answers to

14 interrogatories, and admissions on file, together with the affidavits, if any, show that there is

15 no genuine issue as to any material fact and that the moving party is entitled to a judgment as

16 a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient

17 evidentiary basis on which a reasonable fact finder could find for the non-moving party, and

18 a dispute is "material" only if it could affect the outcome of the suit under governing law.

19 See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "Where the record taken

20 as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

21 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

22 587 (1986) (citation omitted). A principal purpose of the summary judgment procedure "is to

23 isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317,

24 323-24 (1986).

25     A party moving for summary judgment that does not have the ultimate burden of

26 persuasion at trial has the initial burden of either producing evidence that negates an essential

27 element of the non-moving party's claims or showing that the non-moving party does not

28 have enough evidence of an essential element to carry its ultimate burden of persuasion at

trial.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

Where the party moving for summary judgment would bear the burden of proof at trial, it

bears the initial burden of producing evidence which would entitle it to a directed verdict if

the evidence went uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden

Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).  If the moving party does not satisfy its initial

burden, the non-moving party has no obligation to produce anything and summary judgment

must be denied.  If, however, the moving party satisfies its initial burden of production, then

the non-moving party may not rest upon mere allegations, or denials of the adverse party's

evidence, but instead must produce admissible evidence to show there exists a genuine issue

of material fact.  See Nissan Fire & Marine, 210 F.3d at 1102.

**DISCUSSION**

1. Legal Standards

*A. Discrimination*

In order to prevail in a Title VII disparate treatment case, a plaintiff must first

establish a prima facie case of discrimination.  An individual suffers "disparate treatment"

when he or she is "singled out and treated less favorably than others similarly situated on

account of race or any other criterion impermissible under [Title VII]."  Gay v. Waiters' and

Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 537 (9th Cir. 1982).  A plaintiff can

establish a prima facie case of disparate treatment through direct proof of intentional

discrimination, or by "offering evidence adequate to create an inference that an employment

decision was based on a discriminatory criterion illegal under the Act, . . . i.e., evidence that

indicates that it is more likely than not that the employer's actions were based on unlawful

considerations."  Nanty v. Barrows Co., 660 F.2d 1327, 1331 (9th Cir. 1981) (internal

quotations and citations omitted).

The burden then shifts to the defendant to articulate a legitimate nondiscriminatory

reason for the adverse employment decision.  If the defendant carries its burden, the plaintiff

is then afforded an opportunity to demonstrate that the "'assigned reason' was 'a pretext or

discriminatory in its application.' "  Lynn v. Regents of the Univ. of California, 656 F.2d

United States District Court
For the Northern District of California

1337, 1341 (9th Cir. 1981) (quoting <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 807

(1973).  Pretext may be shown either (1) directly showing that a discriminatory motive more

likely than not motivated the employer or (2) indirectly by showing that the employer's

proffered explanation is unworthy of credence.  <u>Godwin v. Hunt Wesson Inc.</u>, 150 F.3d

1217, 1220 (9th Cir. 1998).  To establish pretext, "very little" direct evidence of

discriminatory motive is required, but if circumstantial evidence is offered, such evidence has

to be "specific" and "substantial."  <u>Id.</u> at 1222; <u>Little v. Windermere Relocation, Inc.</u>, 265

F.3d 903, 915 (9th Cir. 2001).

### *B. Retaliation*

The <u>McDonnell Douglas</u> burden-shifting analysis also applies to retaliation claims

under Title VII.  The plaintiff must establish a prima facie case by showing that: (1) he

engaged in a protected activity; (2) he suffered an adverse employment decision; and (3)

there was a causal link between the protected activity and the adverse employment decision.

<u>See Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1064 (9th Cir. 2002).  To establish

causation, the plaintiff must show by a preponderance of the evidence that engaging in the

protected activity was one of the reasons for the adverse employment decision and that but

for such activity the decision would not have been made.  <u>See id.</u>

After the plaintiff establishes a prima facie case of retaliation, the burden shifts to the

defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment

action.  <u>See</u> <u>Winarto v. Toshiba America Electronics Components, Inc.</u>, 274 F.3d 1276, 1284

(9th Cir. 2001).  If the employer rebuts the inference of retaliation, the burden shifts back to

the plaintiff to show that the defendant's explanation is merely a pretext for impermissible

retaliation.

### *C. Hostile Work Environment*

To establish a prima facie hostile work environment claim under Title VII, the

plaintiff must raise a triable issue of fact as to whether (1) he was subjected to verbal or

physical conduct because of an impermissible criterion (2) the conduct was unwelcome; and

(3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  employment and create an abusive work environment.  See Manatt v. Bank of Am., 339 F.3d

2  792, 798 (9th Cir. 2003).

3          "A hostile work environment claim involves a workplace atmosphere so

4  discriminatory and abusive that it unreasonably interferes with the job performance of those

5  harassed."  Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  The working

6  environment must both subjectively and objectively be perceived as abusive.  See id.

7  Whether the workplace is objectively hostile must be determined from the perspective of a

8  reasonable person with the same fundamental characteristics and hostility must be measured

9  based on the totality of the circumstances.  See id.  "These [circumstances] may include the

10  frequency of the discriminatory conduct; its severity; whether it is physically threatening or

11  humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

12  employee's work performance."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

13          2. Case 1F-946-1118-96

14          Mohamed's first EEOC complaint centered around allegations that Manager Leon

15  Francisco failed to accommodate his religion by giving Fridays off and made untruthful

16  comments after Mohamed reported the sexually-harassing conduct of a co-worker.   The

17  government argues that Mohamed's complaint about days off fails because there was a

18  legitimate, non-discriminatory reason for the denial: Francisco allowed all junior managers to

19  change their days off only for one or two weeks, but not more than that, while more senior

20  managers did have the seniority to select which days they took off.  See Francisco Decl. ¶ 15.

21          Mohamed has failed to put forth evidence that would permit a juror to conclude that

22  the denial was more likely than not the result of discriminatory animus.  Thus, Mohamed has

23  failed to carry his prima facie burden.  Mohamed alleges that Francisco refused to allow him

24  to take Fridays off for a discriminatory reason (presumably religious discrimination), but

25  there is no evidence in the record – whether direct or circumstantial – that Francisco had a

26  discriminatory motive.  All the record reveals is that Francisco refused to let Mohamed have

27  Fridays off.  There is no evidence regarding why that decision was made.

28

United States District Court
For the Northern District of California

Mohamed's retaliation claim also must fail. Mohamed alleges that he enjoyed Fridays off before filing EEOC complaints, and that he was then forced to work Fridays as retaliation. But the only evidence presented by Mohamed are work sheets for the period of time between December 2, 1995 and May 31, 1996. See Book I, Exh. 13. During this entire time, Mohamed had the same schedule, with Sundays and Mondays off. Thus, there is no evidence supporting Mohamed's allegation of retaliation.

As to Mohamed's claim that he was discriminated and retaliated against when Francisco threatened to downgrade him as a result of reporting sexual harassment, Mohamed's claim of discrimination fails because there is no evidence that Francisco's threat of a downgrade was based on unlawful considerations. The implication in Mohamed's briefing is that he was discriminated against on the basis of sex. But there is no evidence that Francisco treated Mohamed differently than other similarly situated subordinates.

Summary judgment is also appropriate on Mohamed's claim of retaliation based on the threatened downgrade because there is nothing in the record beyond Mohamed's base allegation that Francisco threatened to downgrade him as a result of Mohamed's participation in EEO actions. Francisco provided a legitimate, non-discriminatory explanation for the threatened downgrade – that Mohamed actively solicited sexual harassment complaints rather than report such complaints through proper USPS procedure – and Mohamed has submitted no evidence to under cut that explanation. Accordingly, summary judgment is appropriate.

### 3. Case 1F-946-0021-97

Summary judgment is also appropriate on Mohamed's claim that he was discriminated and retaliated against when he received a letter from the Senior Plant Manager denying him a "New Idea Proposal award" for a proposal involving a slotted mail sorter with labels corresponding to different days of the week. See USPS 198.

In his declaration, the then Manager of In-Plant Support, Robert Fisher, stated that Mohamed's idea was not new and was already in operation throughout the western United States. See Fisher Decl. ¶ 3. Moreover, because Mohamed was a supervisor and was therefore responsible for making suggestions for improvements in operations, Fisher

considered the idea as appropriate for consideration through the supervisor's merit review process.  See id. ¶ 4.  Plant Manager Carol Miller affirmed Fisher's decision based on his rationales.

Mohamed alleges that Miller denied his idea because she only compensated black employees who developed new ideas.  See Mohamed's Decl. in Opposition to Miller Decl. ¶ 19.  But there is no concrete evidence supporting Mohamed's allegation of discrimination, and it is therefore insufficient.  Mohamed also alleges that Miller denied his idea because she was aware of his prior EEOC activity.  See id. ¶ 19.  But nowhere does Mohamed show that the stated reasons for denial are unworthy of credence.  Because Mohamed has failed to show that the stated reasons for the denial were pretextual, summary judgment for defendants is appropriate.

### 4. Case 1F-946-0024-97

Mohamed has also failed to offer evidence showing that defendants' decision to promote someone else into the position of Supervisor of Distribution Operations because of superior credentials was pretextual.  Millie Watson explained that although Mohamed was one of six finalists for the position, she hired Jeffrey Thompson instead because Thompson "was the best qualified applicant."  Watson Decl. ¶ 4.  Although Mohamed was deemed "well qualified," he was not as well qualified as Thompson because he lacked "experience working in International Mail."  Id. ¶ 5.

Mohamed presents no direct evidence that Watson was motivated by Mohamed's race or prior EEO activity, but only relies on the assertion that Watson's reason was pretextual because he was a better candidate than Thompson.  "It is conceivable that a plaintiff in a case such as this could be so overwhelmingly better qualified than another applicant that on this evidence alone a trial court could properly find pretext and intent to discriminate.  However, the facts in the record do not suggest this was such a case."  Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir. 1993).  Mohamed has failed to establish that he was so much more qualified than Thompson that there can be no dispute that he was clearly better qualified for the position.  See Millbrook v. IBP, Inc., 280 F.3d 1169, 1180 (7th Cir. 2002) ("[W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants'

United States District Court
For the Northern District of California

1   competing qualifications does not constitute evidence of pretext unless those differences are so

2   favorable to the plaintiff that there can be no dispute among reasonable persons of impartial

3   judgment that the plaintiff was clearly better qualified for the position at issue.") (internal quotation

4   and citation omitted).

5       5. Case 1F-946-0062-97

6       Summary judgment is also appropriate as to Mohamed's allegation that he was

7   discriminated and retaliated against on February 19, 1997, when his supervisor gave him an

8   unfavorable evaluation and made negative and untrue statements on his application for a

9   membership position on the Diversity and Affirmative Action Advisory Committee.  See

10  USPS 264.

11      Mohamed  has not offered sufficient evidence to demonstrate that the stated reason for

12  writing the negative comments – that the supervisor actually believed Mohamed's career had "been

13  marred with incidents and investigations that strongly point to deficiencies in his human relations

14  skills" – was pretextual.  There is no direct evidence that the supervisor made the statement on

15  account of Mohamed's race or involvement in EEOC proceedings.  The only evidence Mohamed

16  forwards is that the supervisor was aware of his involvement in EEO proceedings when he wrote the

17  letter.  See Opp. at 67.  This meager piece of circumstantial evidence is not sufficient.  "To show

18  pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence

19  challenging the credibility of the employer's motives."  Vasquez v. County of Los Angeles, 349

20  F.3d 634, 642 (9th Cir. 2003) (emphasis added).  The evidence forwarded by Mohamed is not

21  substantial or specific enough to survive summary judgment.

22      6. Case 1F-946-0064-97

23      Summary judgment for the defendants must be granted as to Mohamed's claims of retaliation

24  and discrimination based on two incidents where he was required to submit additional

25  documentation for leave because Mohamed has not submitted evidence that demonstrates the

26  discriminatory reasons put forth by the government are pretextual.

27      According to the declaration of Herbert Gauthier, who served as the Senior Manager

28  Distribution Operations, Mohamed's request for two weeks of sick leave was delayed because the

United States District Court
For the Northern District of California

1   documentation initially submitted indicated he could perform partial duties.  See Gauthier Decl. ¶ 6.

2   Gauthier suggested that Mohamed should be at work unless he submitted documentation of total

3   incapacity.  See id.  After Mohamed submitted revised documentation, the leave was approved.  See

4   id.

5          Mohamed argues that Gauthier required additional documentation in retaliation for

6   Mohamed's previous EEO actions naming Gauthier as a discriminatory official.  Mohamed notes

7   that Gauthier's request for additional documentation followed a decision by the EEO in a case

8   involving Mohamed and Gauthier by a mere three weeks.  See Mohamed Decl. in Opp. to Gauthier

9   Decl. ¶ 27.  "Temporal proximity between protected activity and an adverse employment action can

10  by itself constitute sufficient circumstantial evidence of retaliation in some cases."  Bell v.

11  Clackamas County, 341 F.3d 858, 865 (9th Cir.2003) (finding sufficient evidence to support

12  retaliation claim where low performance reviews immediately followed plaintiff's complaints).

13  However, temporal proximity is generally analyzed in the context of the plaintiff's prima facie

14  burden – because proximity can establish a causal connection between the adverse action and

15  knowledge of participation in a protected activity – but not in the context of pretext.  See, e.g.,

16  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).  Thus, even if a plaintiff establishes

17  temporal proximity, they also must provide independent reasons that undercut the defendant's stated

18  reason for taking the action.  See, e.g., Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1121 (9th Cir. 2000)

19  (en banc), rev'd on other grounds by, US Airways, Inc. v. Barnett, 535 U.S. 391 (2002).

20         Here, Mohamed has offered no other evidence that undercuts Gauthier's stated reasons.  For

21  example, there is no evidence that Mohamed's initial submission of documents was sufficient or that

22  the request for additional documentation was unnecessary.  Accordingly, Mohamed's claim of

23  retaliation fails.

24         Mohamed's claim of discrimination also fails because there is no evidence that Gauthier's

25  action was motivated by discriminatory animus.  Mohamed asserts that Gauthier never required

26  additional documentation from other supervisors who requested leave, see Opp. at 65, but there is no

27  evidence that those employees were similarly situated because their initial documentation supported

28  the conclusion that they could perform partial duties.

                                                   13

**United States District Court**
For the Northern District of California

1    The second part of Mohamed's claim is that Gauthier discriminated and retaliated against

2    him when Gauthier requested statements as to why he qualified for FMLA leave.  According to

3    Gauthier, Mohamed requested six weeks of leave under the FMLA to bond with his son in Egypt.

4    <u>See</u> Gauthier Decl. ¶ 7.  Because only a birth certificate was submitted in support of the request,

5    Gauthier asked that Mohamed submit "a short statement of justification" consistent with FMLA

6    rules and regulations requiring written notice setting forth the reasons for requested leave.  <u>See id.</u>;

7    <u>see also</u> 29 C.F.R. § 825.302(d) ("An employer may also require an employee to comply with the

8    employer's usual and customary notice and procedural requirements for requesting leave.  For

9    example, an employer may require that written notice <u>set forth the reasons for the requested leave</u>. . .

10   .") (emphasis added).

11   Mohamed again alleges that the request for documentation was made in retaliation for his

12   activity in EEO proceedings, <u>see</u> Mohamed Decl. in Opp. to Gauthier Decl. ¶ 29, but nowhere

13   undercuts the legitimacy of Gauthier's stated rationale.  The temporal proximity between Gauthier's

14   request and ongoing EEO proceedings is not sufficient to satisfy Mohamed's burden of proving that

15   Gauthier's reasons are pretextual.  Thus, Mohamed's retaliation claim fails.

16   Similarly, there is no evidence, either direct or circumstantial, suggesting that Gauthier's

17   request was the result of discriminatory animus.  Beyond mere allegations, there is no concrete

18   evidence that Mohamed was treated differently than other employees who failed to provide a reason

19   for going on FMLA leave and no evidence that Mohamed had properly submitted his request for

20   leave.  Accordingly, summary judgment is appropriate as to all claims relating to Case 1F-946-

21   0064-97.

22   <u>7. Case 1F-946-0107-97</u>

23   Mohamed has three claims related to Case 1F-946-0107-97, none of which are

24   sufficient to survive summary judgment.  First, Mohamed complains that manager Ezequiel

25   Munoz deliberately failed to approve a request for leave filed on June 16, 1997  until July 9,

26   1997 – the day <u>after</u> the appointment for which leave was requested – to cause confusion and

27   anxiety.  But according to Munoz, Mohamed's initial request for Annual Leave was

28   disapproved because the medical documentation he submitted was unacceptable.  <u>See</u> Munoz

14

United States District Court
For the Northern District of California

Decl. ¶ 5.  Munoz states that the form already had the "approved box" checked off and requested Leave Without Pay even though Mohamed had 984 hours of Sick Leave, which was the appropriate leave.  See id. ¶ 6.

Mohamed argues that Munoz's stated reasons are pretextual and that Munoz failed to approve leave as retaliation for EEO claims filed by Mohamed against him.  The problem with Mohamed's argument is that there is no evidence in the record that prior to this incident, Mohamed had filed EEO charges against Munoz.  See Munoz Decl. ¶ 4 (listing four EEO cases in which Munoz was named as responsible official, beginning with this case).  For that reason, no juror could conclude that Munoz delayed approval of the leave in retaliation for EEO complaints filed against him by Mohamed.

There is also no evidence that Munoz was motivated by discriminatory animus in delaying approval of the request for leave.  Mohamed claims that other supervisors had their leave approved in a timely manner with no further documentation required, but there is no evidence that those employees were similarly situated because they also filled out their forms in the manner alleged.

Mohamed's second claim is that Munoz discriminated and retaliated against him by sending a letter containing Munoz's version of a conversation's content.  The letter is relatively dry, and it merely sets forth what Munoz believes was said regarding work assignments.  See Munoz Decl. Ex. A.  As the government persuasively argues, Mohamed's retaliation claim must fail because receipt of the letter did not constitute an adverse employment action.  As a matter of law, receiving a letter with a supervisor's account of a conversation is not "reasonably likely to deter employees from engaging in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

Nor can Mohamed sustain the claim that Munoz sent the letter for a discriminatory reason.  Mohamed's claim fails at the first step because he has submitted no evidence that would create an inference that Munoz's decision to sent the letter was based on a discriminatory criterion.

United States District Court
For the Northern District of California

1    Third, Mohamed complains that he was discriminated and retaliated against when he

2  was informed that Manager Herb Gauthier was investigating him.  Again, Mohamed has

3  failed to prove a prima facie case of retaliation: receiving a hearsay report that a manager is

4  conducting an investigation is not reasonably likely to deter employees from engaging in

5  protected activity.  Mohamed has also failed to prove a prima facie case of discrimination

6  because there is no evidence that Gauthier was investigating Mohamed because of his race,

7  sex or other unlawful criterion.

8    8. 1F-946-0034-98

9    Mohamed's seventh EEO case concerned whether he was discriminated and retaliated

10  against when: (1) on January 14, 1998, a letter of potential reduction was rescinded due to

11  conflicting statements; (2) management sent four letters between December 4, 1997 and

12  January 21, 1998 concerning the proposed reduction to Mohamed instead of his attorney; and

13  (3) Mohamed was excluded from the Fiscal Year 1997 Variable Pay Program.  See USPS

14  915.

15    Regarding the first charge, Manager Munoz sent Mohamed a letter on September 13,

16  1997, proposing a reduction in grade and pay for "conduct unbecoming a postal supervisor."

17  See Munoz Decl. Exh. B.  Munoz made the proposal in response to an investigation that

18  revealed Mohamed attempted to persuade a union shop steward to reopen a harassment

19  charge that had been settled through the grievance process.  See id.  Munoz claims that he

20  discussed the letter with his supervisor, Herb Gauthier, who concurred in the proposed letter.

21  The shop steward – Raymond Brown – later changed his story, and therefore Plant Manager

22  Carol Miller decided not to sustain the action.  See Munoz Decl. ¶ 12; Miller Decl. Exh. A.

23    Even if the downgrade letter were written in retaliation for Mohamed's participation

24  in protected activity, Mohamed's retaliation claim would fail because he complains of a non-

25  final action that was later overturned.  See Brooks v. City of San Mateo, 229 F.3d 917, 929-

26  30 (9th Cir. 2000).  Thus, the downgrade letter does not constitute an adverse employment

27  action.

28

United States District Court
For the Northern District of California

1    Moreover, there is no evidence, whether direct or circumstantial, to suggest that the

2    letter as written as the result of discriminatory animus.

3    Mohamed's second complaint is based on the fact that human relations employee Bonnie

4    Johnson sent letters concerning the proposed reduction in pay to Mohamed directly rather than to his

5    lawyer. Johnson has stated that sending disciplinary letters directly to the employee "has been the

6    standard practice of the Postal Service," Johnson Decl. ¶ 4, and that she simply followed standard

7    procedure when she caused two letters to be delivered to Mohamed, see id. ¶ 6.

8    Mohamed's retaliation claim fails at the outset because having letters sent to oneself rather

9    than to one's lawyer is not an adverse employment action. Moreover, there is no evidence in the

10   record – either direct or circumstantial – that Johnson was motivated by discriminatory animus.

11   Mohamed's claim based on his exclusion from the Fiscal Year 1997 Variable Pay

12   Program also fails. Mohamed's direct supervisor – Munoz – determined that Mohamed was

13   undeserving of inclusion in the pay program because Mohamed was a "disruptive presence in the

14   workplace," did not get along well with others, allegedly intimidated other employees and solicited

15   workers to make sexual harassment claims. See Munoz Decl. ¶ 13. Munoz claims that because of

16   his evaluation, he felt that Mohamed was "undeserving of the pay incentives available to employees,

17   based on their performance, through the Variable Pay program." Id.

18   Once again, Mohamed has not set forth sufficient evidence of pretext. Mohamed argues that

19   Munoz only became his supervisor weeks before making the evaluation and claims that Munoz

20   therefore did not have authority to exclude him from the pay program. See Mohamed Decl. in Opp.

21   to Munoz Decl. ¶ 19. Unfortunately for Mohamed, there is nothing in the record to support his

22   interpretation of USPS policy. Mohamed may believe that Munoz's decision was driven by

23   Munoz's awareness of Mohamed's EEO activity, but there is no evidence other than the fact that

24   Munoz knew about Mohamed's complaints to support his retaliation claim. Moreover, there is no

25   evidence – direct or circumstantial – that Munoz's decision was based on discriminatory animus.

26       9. Case 1F-946-0065-98

27   Summary judgment for the defendants is appropriate as to Mohamed's claim that he

28   was retaliated and discriminated against when: (1) on June 2, 1998, he received information

17

**United States District Court**
For the Northern District of California

1    regarding false statements made by postal managers and supervisors and submitted to the

2    Department of Labor's Office of Workers' Compensation Processing (OWCP) that defamed

3    his character; and (2) in July of 1998, he became aware of an affidavit statement provided by

4    Mario Valdez, the Manager of Distribution Operations, which contained false accusations

5    and violated a prior EEO settlement agreement.

6         Mohamed filed a claim with OWCP – the department that reviews claims for workplace

7    injuries made by federal employees – for workers' compensation due to work-related stress.  In his

8    application, Mohamed leveled accusations at numerous employees to explain why work was causing

9    an injury.  Acting Senior Injury Compensation Specialist Dianna Ybarra sent OWCP a response to

10   Mohamed's statement by gathering and submitting written responses from all the managers

11   identified by Mohamed, including Leon Francisco and Herb Gauthier.  In their statements, the

12   managers denied the claims made by Mohamed, asserting that Mohamed was never "abused" or

13   "treated disrespectfully," <u>see</u> USPS 7179 (Gauthier letter), and that Mohamed was "making up

14   stories," <u>see</u> USPS 7180 (Francisco letter).  In addition, Manager Munoz sent a letter providing

15   OWCP with his version of interactions he had with Mohamed.  <u>See</u> USPS 7181-83.  Finally, Ybarra

16   included in the submission a letter that employee Dan Williams had sent to Gauthier and Francisco,

17   detailing his version of an encounter where Mohamed accused him of sexual harassment.  <u>See</u> USPS

18   7185.  In the letter, Williams identified "a disturbing trend of behavior," including attempts to enlist

19   employees in a "holy crusade" against Gauthier and Francisco, and "harassment and subterfuge"

20   against employees who did not cooperate in his "schemes."  <u>Id.</u>

21        To be sure, the letters sent to OWCP – particularly Williams' letter – were unflattering to

22   Mohamed.  But Mohamed has utterly failed to introduce any significant evidence that his colleagues

23   acted for discriminatory or retaliatory purposes rather than because they believed what they were

24   saying.  Again, there is circumstantial evidence that the managers knew about Mohamed's

25   involvement in EEO activities.  But that shred of evidence is not "substantial" enough to overcome

26   the defendants' legitimate, non-discriminatory explanation.

27        <u>10. Case 1F-946-0010-99</u>

28

1    Mohamed's final claim involves a challenge to Dianna Ybarra's delay in preparing his

2    OWCP paperwork and the decision by Ezequiel Munoz to send a memo to OWCP dated

3    September 10, 1998 stating Mohamed's workplace injury claim should not be accepted.

4    Ybarra claims that on January 5, 1998, she received a fax from OWCP dated December 29,

5    1997, which notified Ybarra that Mohamed had filed a compensation claim.  See Ybarra Decl. ¶ 4.

6    The OWCP letter stated that Mohamed's statement was being provided for review and that, "shortly,

7    you will receive a letter requesting a detailed response from your Postal Service."  Id.  Because

8    Ybarra expected a subsequent letter, she did not respond to the OWCP fax.  In late April, she

9    received another fax from OWCP, dated April 23, stating that USPS had failed to respond to the

10   previous December 29 correspondence or complete a Form CA-2, which is the form an employee

11   completes when submitting a claim for occupational injury.  See id. ¶ 5.  Ybarra claims that she sent

12   an initial response to OWCA within five days of receiving their second fax.  See id.

13   Mohamed alleges that Ybarra actually delayed the paperwork because she is related to

14   Munoz, who was named in Mohamed's EEO complaints.  Mohamed complains that Ybarra should

15   have responded to the December 29 fax within 10 days, per USPS rules, but does not dispute the

16   accuracy of Ybarra's statement that OWCA promised a subsequent letter that would request a

17   response.  See Mohamed Decl. in Opp. to Ybarra Decl. ¶ 6.

18   The fact that Ybarra is related to Munoz, though relevant, is hardly substantial enough to

19   overcome Mohamed's burden of establishing pretext.  Even if Ybarra is Munoz's niece, there is no

20   evidence in the record – such as a copy of the OWCA letter – that dispels the notion Ybarra

21   reasonably waited to respond per OWCA instructions.

22   Mohamed also complains that Ybarra did not immediately process a claim for compensation

23   sent by OWCA.  Three days after receiving the claim form – known as a CA-7 – Ybarra requested

24   clarification because she believed the CA-7 had been improperly filled out by Mohamed.

25   Specifically, Ybarra believed that the form was improperly backdated.  See Ybarra Decl. ¶ 10.

26   Again, Mohamed fails to set forth any specific evidence that undercuts Ybarra's explanation.

27   The OWCP responded to Ybarra's request for clarification by concluding that Mohamed did not

28   have to redo the CA-7, see Mohamed Decl. in Opp. to Ybarra Decl. ¶ 23, but that fact hardly

1   establishes that Ybarra's concern about backdating was not the actual reason for her delay in

2   processing.  Once more, the circumstantial evidence that Mohamed forwards is not sufficient to

3   create a triable issue of fact.

4        The last incident identified by Mohamed is Munoz's memo sent to OWCP recommending

5   that Mohamed's claim not be processed.  According to Munoz, the OWCP sent Munoz a request for

6   information.  See Munoz Decl. ¶ 15.  Munoz responded by denying Mohamed's allegation and

7   enclosing copies of ten written complaints made by employees who worked under Mohamed.

8   See Munoz Decl. Exh. D.

9        Mohamed has not set forth any evidence that undercuts Munoz's assertion that the letter

10  was written in a genuine effort to set forward his own interpretation of the events in question.

11       11. Claim of Hostile Work Environment

12       To prevail on a hostile work environment claim, the plaintiff must demonstrate that he

13  was subjected to verbal or physical conduct because of his race, sex or other protected

14  ground.  Mohamed complains of a wide spectrum of conduct, but there is no evidence that

15  any of it was motivated by, for example, Mohamed's race or sex.

16       The record is wholly devoid of any evidence that Mohamed's alleged persecutors

17  were motivated by his race.  There is, for example, no evidence of derogatory name-calling,

18  see McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1109 (9th Cir. 2004), or stereotyping, see

19  Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002), based on Mohamed's race.

20       Mohamed does allege that he heard about and was disturbed by incidents of sexual

21  harassment at the Oakland facility.  But these incidents – none of which were directed at him

22  – were not sufficiently severe to alter the conditions of Mohamed's employment.  Cf.

23  Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1144 (7th Cir. 1997) ("[I]ncidents –

24  directed at others and not the plaintiff – do have some relevance in demonstrating the

25  existence of a hostile work environment.  However, as this court has recognized, the impact

26  of 'second-hand harassment' is obviously not as great as the impact of harassment directed at

27  the plaintiff.") (citations omitted).  Where, as here, sexually charged words were directed at

28  others – and indeed persons of the opposite sex – and there is no allegation that any conduct

was directed towards Mohamed, summary judgment on Mohamed's hostile work environment claim is appropriate.  See Conto v. Concord Hosp., Inc., 265 F.3d 79, 82 (1st Cir. 2001) (holding that evidence submitted by plaintiff did not generate a trial-worthy hostile work environment claim where employee witnessed male coworkers uttering sexually-charged profanities and making obscene bodily gestures to others, but never to her).

**IT IS SO ORDERED.**

Dated: October 23, 2007

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California